IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., et al. | § § § |
| v. | §  CIVIL ACTION NO. 6:07-CV-125 |
| ACER AMERICA CORPORATION, et al. | § § § § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Honeywell International, Inc.'s and Honeywell Intellectual Properties, Inc.'s (collectively "Honeywell") Motion to Compel Discovery from Defendant CPT, (Doc. No. 127), and Reply in Support, (Doc. No. 133), and Defendant Chunghwa Picture Tubes' ("CPT") Response (Doc. No. 129), and Sur-reply, (Doc. No. 134). The Court held a hearing on this Motion on January 29, 2009.

For the reasons stated herein, Plaintiff's Motion is **GRANTED**.

## BACKGROUND

In this suit, Honeywell asserts that CPT's products infringe U.S. Patent No. 5,041,823 (the "'823 patent"), which relates to a flicker free LCD driver system. LCD screens are susceptible to an electroplating corrosion effect unless the polarity of the electrical signal sent to the screen is reversed. Unfortunately, polarity switching of the entire screen causes a noticeable flicker of the image on the screen. There are a number of inversion schemes that an LCD system can use to prevent the flicker effect; Honeywell maintains that the '823 patent covers some systems that employ dot and/or column inversion schemes

CPT is a Taiwan-based company with offices in Taiwan, China, and Malaysia. It produces "modules," which are essentially LCD screens that are not yet finished products ready for retail sale.

CPT purchases Driver Integrated Circuits ("Driver ICs") from various driver manufacturers, and incorporates these Driver ICs into its modules. CPT then sells its modules to third parties who finish the products so they are ready for sale to an end user. Many of CPT's products employ dot and/or column inversion.

Around 2002, Honeywell reverse engineered several Driver ICs and concluded that these Driver ICs could be included in infringing LCD products. In November 2002, Honeywell sent a letter to CPT stating that Honeywell believed that LCD systems incorporating certain Driver ICs could infringe the '823 patent. This letter specifically accused one CPT product by model number and included a list of Driver ICs which Honeywell had either torn down and investigated, or which it believed were similar to the Driver ICs that it had investigated. In August 2005, CPT declined to take a license for the '823 patent. On March 20, 2007, Honeywell filed the present suit specifically accusing three CPT products. CPT answered on October 17, 2007.

After litigation ensued, the parties continued correspondence in which CPT disclosed its top ten Driver IC suppliers, and Honeywell offered a more extensive list of allegedly infringing Driver ICs. In March 2008, Honeywell served CPT with its patent infringement contentions ("PICs"). In its PICs, Honeywell specifically accused three CPT products by model number, as well as all CPT modules incorporating the same or similar Driver ICs contained in those three modules. Soon after receiving Honeywell's PICs, CPT requested that Honeywell provide more specific information in its PICs. Honeywell did not amend its PICs, and CPT did not file a motion to compel more definite PICs. On July 22, 2008, the parties met and conferred regarding the scope of discovery in the case. Honeywell expressed its desire for discovery on 600 of CPT's products; CPT expressed its belief that discovery should be limited to the products specifically accused in Honeywell's PICs.

In August 2008, Honeywell served its Notice of 30(b)(6) Deposition and its First Combined Interrogatories on CPT. Essentially, Honeywell requested a list of all CPT products which perform dot and/or column inversion and the model numbers of the Driver ICs incorporated therein, the technical specifications and sales information for the Driver ICs used in those products, and information regarding sales and marketing to foreign entities. CPT responded in September and October of 2008, but Honeywell claims that these responses were insufficient. On November 18, 2008, Honeywell filed the present motion seeking an order compelling CPT to:

1.) Supplement its response to Interrogatory No. 1 by identifying all of its LCD products that perform dot and/or column inversion;

2.) Supplement its responses to Interrogatory Nos. 2-5, 7-8, 10-16, and 18 to include responsive information regarding all of its LCD products that perform dot and/or column inversion;

3.) Supplement it responses to Interrogatory Nos. 13, 14, 15, and 16 to include responsive information related to its distribution agreements, correspondence, discussions, agreements, and promotional, marketing, and advertising efforts as it relates to non-U.S. entities that CPT is reasonably aware resell or otherwise redistribute CPT's products into the United States;

4.) Produce a corporate representative prepared to testify with knowledge regarding: 1) all CPT products that incorporate Drivers IC's capable of dot and/or column inversion; and 2) sales and marketing of such products in the United States and/or to companies that resell or redistribute such products in the U.S. market; and

5.) Pay Honeywell's reasonable costs and fees in bringing its Motion to Compel.

## DISCUSSION

**I.      Discovery of Non-Accused Products**

### A. The Parties' Arguments

Honeywell argues that it is entitled to discovery related to the products accused in its PICs and all reasonably similar products. It claims that the local patent rules only require a Plaintiff to provide "representative examples" in its PICs, and that based on those examples, Defendants must disclose information related to similar products. Furthermore, it maintains that in order to determine whether any other CPT products potentially infringe the '823 patent without discovery, it would need to purchase and reverse engineer each CPT product. Honeywell argues that, because this process would cost approximately $25,000 per product, and because CPT offers over 600 different products for sale, this endeavor is cost prohibitive. CPT, on the other hand, should be aware of what is accused and has ready access to the technical information sought by Honeywell.

CPT argues that Honeywell's discovery efforts should be limited to the products accused in Honeywell's PICs. It points out that, Honeywell accused a number of other Driver ICs in its correspondence with CPT, but it chose to accuse only three Driver ICs in its PICs. Furthermore, CPT maintains that all of the information Honeywell is now requesting is publicly available. That is, Honeywell need only purchase the CPT products, which are approximately $200 each, visually inspect them to determine which Driver ICs are use, and then pull information on those Driver ICs off the internet. CPT further contends that, even if this information is cost prohibitive, Honeywell is not entitled to discovery on any additional products because its PICs did not give CPT sufficient notice any other products were being accused.

### B. Applicable Law

"The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before

bringing suit, requiring plaintiffs to disclose their preliminary[1] infringement contentions before discovery has even begun." *American Video Graphics, L.P. v. Electronic Arts, Inc.,* 359 F.Supp.2d 558, 560 (E.D. Tex. 2005). "[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path. . . ." *Connectel, LLC v. Cisco Sys., Inc.,* 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005).

Local Patent Rule 3-1 requires a party to provide PICs setting forth "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *STMicroelectronics, Inc. v. Motorola, Inc.,* 308 F.Supp.2d 754, 755 (E.D. Tex. 2004). A party may amend its PICs, but only upon a showing of good cause. Fed. R. Civ. P. 16(b); *Garmin, Ltd. v. TomTom, Inc.*, No. 2:06-cv-338, 2007 WL 2903843 at *6 (E.D. Tex. Oct. 3, 2007).

The parties agree that, a party's PICs help define the scope of discovery, but disagree as to how that scope is precisely defined. Honeywell relies primarily on *Epicrealm Licensing LLC v. Autoflex Leasing, Inc.* In that case, Magistrate Judge Craven issued an Order limiting discovery to only those products specifically accused in the plaintiff's PICs. Judge Folsom remanded the Order after determining that there is "no bright line rule that discovery can only be obtained if related to an accused product identified in a party's PICs." *Epicrealm Licensing LLC v. Autoflex Leasing, Inc.*, No. 2:05-cv-163, 2007 WL 2580969 at *3 (E.D. Tex. Aug. 27, 2007) ("*Epicrealm I*"); *see also O2 Micro Int'l Ltd.*, 467 F.3d at 1366 ("[i]f a local patent rule required the final identification of

---

[1] The Eastern District no longer uses the term "preliminary" to describe the infringement contentions required under Local Patent Rule 3-1. *See* E.D. Tex. Gen. Order 06-15 at 27-28 (Oct. 27, 2006).

5

infringement and validity contentions at the outset of the case . . . it might well conflict with the spirit, if not the letter, of notice pleading and broad discovery regime created by the Federal Rules"). Accordingly, the Court concluded that the scope of discovery may include products "reasonably similar" to those accused in a party's PICs. *Epicrealm I*, 2007 WL 2580969 at *3. The Court also stated that this analysis should consider the diligence of the party seeking discovery. *Id.*

On remand, Magistrate Judge Craven applied the "reasonably similar" standard. *Epicrealm Licensing LLC v. Autoflex Leasing, Inc.*, No. 5:07-cv-125, slip op. (E.D. Tex. Nov. 20, 2007) ("*Epicrealm II*"). The case involved a method for dynamically generating web pages, and the PICs identified accused products by web page name, by web page generation software system, or by both. The Plaintiff sought discovery of information related to accused web pages and systems, web pages corresponding to accused systems, systems corresponding to accused web pages, and certain other non-accused systems that would be covered under its PICs. *Id.* at 8. After considering the defendants' arguments comparing their non-accused systems to the infringement theories contained in Plaintiff's PICs, the Court ordered the defendants to provide information related to any system or web page corresponding with any accused system or web page. *Id.* at 19. It did not order defendants to provide information for any system which plaintiff failed to identify by web page or system. *Id.*

CPT relies primarily on *Orion IP, LLC v. Staples, Inc.* In that case, the defendant sought an Order preventing the plaintiff from amending its PICs. The case involved a computer assisted method for generating customized sales proposals. Despite making broad infringement accusations against entire families of websites, the Plaintiff specifically accused only two websites in its PICs. It later sought to amend its PICs and obtain discovery related to several other non-accused websites. *Orion IP, LLC v. Staples, Inc.*, 2:04-cv-297, slip op. at 2-3 (E.D. Tex. July, 7, 2005) ("*Orion I*"). The

6

Court struck Plaintiff's amended PICs, and in doing so prevented it from obtaining discovery of the non-accused websites. *Id.* at 4. It concluded that Plaintiff had not shown good cause to include additional infringement theories at the current stage in the litigation. *Id.*

In a later opinion, *Orion II*, the Court denied a second attempt by the defendant to limit the plaintiff's theory of infringement. *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 816 (E.D. Tex. 2006) ("*Orion II*"). The defendant claimed that the plaintiff's expert report impermissibly amended its PICs by discussing aspects of the accused websites not specifically identified in its PICs. The Court noted that the plaintiff's PICs explicitly accused the entire websites, and that a website is not a static object that can function only in one manner. Because a user can take multiple paths when navigating a website, the Court found that it would be impractical for a plaintiff to compile screenshots detailing every possible path. *Id.* Instead, the Court stated that a plaintiff may use its PICs to provide a specific theory of infringement and offer representative examples. The Court also admonished the Defendant for complaining about the plaintiff's PICs late in the case, instead of filing a motion with the Court seeking clarification of the PICs. *Id.* It stated that a "defendant cannot lay behind the log until late in the case and then claim that it lacks notice as to the scope of the case or the infringement contentions." *Id.* at 818.

Honeywell claims that, as in *Orion II*, its PICs provide a specific theory of infringement and representative examples of CPT's accused products. Thus, under *Epicrealm I*, it should be allowed discovery of all of CPT's reasonably similar products—specifically, all of CPT's products which perform dot and/or column inversion. CPT argues that, under *Orion I*, Honeywell cannot obtain discovery of non-accused products at this late stage in the litigation. In the alternative, if Honeywell is entitled to discovery of "reasonably similar" products under *Epicrealm I*, this Court must look to

*Epicrealm II* to determine what products are reasonably similar. It analogizes the Driver ICs and Modules at issue in this case to the webpages and systems at issue in *Epicrealm II*. Because that Court only allowed discovery of products mentioned in the plaintiff's PICs by reference to a web page or system, this Court should only allow discovery of those modules which contain the Driver ICs mentioned in Plaintiff's PICs.

Turning first to CPT's arguments, there is no brightline rule that discovery is permanently limited to the products specifically accused in a party's PICs. None of the cases discussed above support that assertion, and in fact, it is inconsistent with the broad discovery regime created by the Federal Rules and the notion that a party may be able to amend its PICs. *See O2 Micro Int'l Ltd.*, 467 F.3d at 1366. Furthermore, CPT's narrow interpretation of *Epicrealm II* is similarly flawed. By arguing that *Epicrealm II* limits discovery to only those products some how mentioned in a party's PICs, CPT is essentially advocating the sort of brightline rule expressly disavowed in *Epicrealm I*. This interpretation ignores the lengthy analysis the *Epicrealm II* Court conducted to determine if certain non-accused products were reasonably similar to the infringement theory outlined in the plaintiff's PICs. No. 5:07-cv-125, slip op. at 8-14.

The *Orion* cases, although decided prior to *Epicrealm I* and *II*, help clarify the reasonably similar standard. They show that the primary purpose of PICs is to give a defendant notice of a plaintiff's specific theories of infringement. *Orion I* limited the plaintiff's discovery efforts because the defendant had no notice of the plaintiff's theory of infringement with regard to the non-accused websites. 2:04-cv-297, slip op. at 2-3. *Orion II* clarified that this limitation would not apply to those aspects of the accused websites, of which the defendant did have notice. 407 F. Supp. 2d at 816.

Turning to Honeywell's arguments, it correctly points out that it may be entitled to discovery concerning all reasonably similar products. However, it is not entitled to discovery of all of CPT's LCD products merely because the '823 patent relates to LCD systems. Honeywell must demonstrate that its PICs gave CPT notice of a specific theory of infringement and that the products for which it seeks discovery operate in a manner reasonably similar to that theory. Honeywell must also demonstrate that it has diligently sought this information. *Epicrealm I*, 2007 WL 2580969 at *3.

### C.     Application

As an initial matter, the Court must determine if the information sought by Honeywell is publicly available. Honeywell argues that Driver IC data sheets are not publicly available, and that it can only acquire the this information by purchasing all of CPT's 600+ product and reverse-engineering the Driver ICs at a cost of approximately $25,000 each. CPT maintains that Honeywell could simply inspect its products to determine the Driver ICs contained in each one, and then locate data sheets for those Driver ICs on the internet.

For purposes of this motion, Honeywell has shown that the information it seeks is not publicly available. CPT's modules contain a variety of different Driver ICs made by a variety of different manufacturers. CPT has not shown that all of these manufacturers post data sheets for their Driver ICs online. Furthermore, Honeywell has effectively argued that, to the extent that CPT has access to this information, CPT can acquire it much more easily than Honeywell can by purchasing and breaking down CPT's products. At the hearing, CPT offered the results of a Google search to show how easily Honeywell could obtain Driver IC data sheets. However, the only data sheet CPT offered as an example was one that it produced to Honeywell during discovery, not one that it found

9

on the internet. Thus, the Court cannot conclude that the information sought by Honeywell is publicly available.

The key issues in this case are whether (1) Honeywell's PICs gave CPT notice of a specific theory of infringement and (2) whether the products it seeks discovery of operate in a manner reasonably similar to that theory. These issues are somewhat complicated by the fact that the Court has already issued a *Markman* opinion which may raise some doubts as to the sufficiency of Honeywell's PICs. Under Local Patent Rule 3-6, Honeywell may choose to amend its PICs in light of the *Markman* opinion, but that is an issue not presently before the Court. For purposes of this motion, the Court will consider the sufficiency of Honeywell's PICs without regard to the Court's *Markman* opinion.

With regard to the first issue, CPT argues that Honeywell's PICs do not contain a specific theory of infringement. It claims, for example, that Honeywell did not identify a specific "shift register" in any of CPT's products. However, Honeywell's PICs do identify structure in CPT's products consistent with its proposed construction of the term "shift register." The purpose of PICs is not to present the Court's construction of the terms at issue or to prove infringement. Instead, the purpose of PICs is to give the opposing party notice of the patentee's infringement theory. Honeywell's PICs satisfy this purpose. If CPT did not understand Honeywell's infringement theory, it could have filed a motion with the Court seeking clarification of Honeywell's PICs. *See Orion II*, 407 F. Supp. 2d at 818 (a "defendant cannot lay behind the log until late in the case and then claim that it lacks notice as to the scope of the case or the infringement contentions").

With regard to the second issue, Honeywell has shown that the products it seeks discovery

of likely operate in a manner reasonably similar to the infringement theory contained in its PICs. The Court is cognizant of the fact that, unlike the Plaintiffs in *Orion I* and *Epicrealm II*, Honeywell is not seeking discovery of information related to products that it could have accused in its PICs. Whereas those cases involved publicly available websites, the Driver IC data sheets at issue in this case are not publicly available, and hence, absent this discovery, Honeywell cannot determine which CPT products to accuse.

Honeywell asserts that all of the Driver ICs in CPT's products operate in essentially the same way. It directs the Court's attention to two Driver ICs specifically accused in its PICs—the S6C1104, manufactured by Samsung, and the HD66323, manufactured by Hitachi/Renesas. Honeywell describes—element by element—how these two Driver ICs are structurally identical and operate in a manner consistent with the infringement theory in its PICs. It argues that, based on these similarities, it is at least entitled to discovery regarding CPT's other dot and/or column inversion products.

CPT responds that the Driver ICs mentioned by Honeywell are actually significantly different. It points to block diagrams of the two Driver ICs which contain numerous differences. It also notes that Honeywell's PICs include two claim charts detailing two separate ways in which accused Driver ICs allegedly infringe the '823 patent. Thus, CPT argues that Honeywell has not shown that all of its dot and/or column inversion products operate in essentially the same way.

The Court finds CPT's arguments unpersuasive. Honeywell has effectively argued that the differences pointed out by CPT between the S6C1104 and the HD66323 Driver ICs are merely superficial. For example, although the block diagram of the S6C1104 labels the shift register as

11

"shift register," and the block diagram of the HD66323 labels this component as a "latch address selector," both Driver ICs contain a shift register. CPT has not meaningfully argued that these two Driver ICs operate in significantly different ways. Similarly, the fact that Honeywell served CPT with separate claims charts for these two Driver ICs does not demonstrate any significant operational difference between the two. In general, separate claim charts for separate accused products are preferred. In this case, the Court finds that the two claim charts describe the same infringement theory for both Driver ICs. The charts are almost identical except for references to different product numbers of modules and Driver ICs. Although the Court cannot say with certainty that all Driver ICs operate in the exact same manner, Honeywell has shown that the Driver ICs in CPT's dot and/or column inversion products likely operate in a manner reasonably similar to the infringement theory described in Honeywell's PICs.[2]

The Court must also consider Honeywell's diligence in seeking this information. *Epicrealm I*, 2007 WL 2580969 at *3. Honeywell has shown that, unlike in *Orion 1* and *Epicrealm II*, the information it seeks in this motion is not publicly available, and hence Honeywell was unable to accuse any additional products in its PICs. Nonetheless, before and during this litigation, Honeywell communicated to CPT its belief that additional CPT products containing different Driver ICs may also infringe the '823 patent. On two occasions it sent letters to CPT expressing this belief and listing potentially infringing Driver ICs. Honeywell brought this motion one month after CPT refused to provide the information requested by Honeywell in its Interrogatories and 30(b)(6) Notice. Based on the totality of circumstances in this case, the Court finds that Honeywell has made sufficient

---

[2]The Court finds reasonable similarity between Honeywell's infringement theory and the products at issue only for the limited purpose of discovery, and without regard to the Court's *Markman* opinion. This finding does not extend to the issue of infringement.

efforts to give CPT notice of a specific infringement theory that could include CPT's dot and/or column inversion products containing non-accused Driver ICs. Thus, Honeywell is entitled to discovery related to these products.

## II.     Discovery of CPT's Extra-Territorial Activities

Honeywell argues that CPT actively induces infringement of the '823 patent by knowingly selling its modules to foreign companies which incorporate those modules into infringing products sold in the U.S. Thus, Honeywell seeks discovery of CPT's sales and communications with non-U.S. companies. CPT argues that this information is not discoverable because these activities cannot constitute infringement under U.S. patent law.

Parties may obtain discovery regarding any non-privileged matter provided that it "appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). 35 U.S.C. § 271(b) provides: "Whoever actively induces infringement of a patent shall be liable as an infringer." "A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys. Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). Aiding and abetting direct infringement includes selling infringing products for re-sale to consumers. *See Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 410-11 (S.D.N.Y. 2007). Inducement also requires intent to cause direct infringement. *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). The requisite intent can be shown by demonstrating that the defendant "knew or should have known that his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 533 (Fed. Cir. 1990).

Honeywell argues, and CPT does not dispute, that CPT sold potentially infringing modules to foreign companies with knowledge that those modules would be incorporated into consumer products sold in the U.S. Thus, at least for purposes of this motion, CPT does not dispute that direct infringement may have occurred, and that CPT knowingly induced this infringement by selling its modules to potential direct infringers. Nonetheless, CPT claims that it is not liable for these actions under section 271(b) because the scope of section 271(b) does not extend to acts of inducement committed outside the U.S. CPT cites no authority which so limits section 271(b). In contrast, a number of cases state that section 271(b) does extend to extra-territorial activities. *See Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 410 (S.D.N.Y. 2007); *C. Van der Lely N.V. v. F. Ili Maschio S.n.c.*, 222 U.S.P.Q. 399, 430 (S.D. Ohio 1984); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, No. C 01-4925, 2006 WL 463525 at *7 (N.D. Cal. Feb. 24, 2006).[3]

Although the Federal Circuit has not directly addressed this question, it has implied that the scope of section 271(b) is not limited to U.S. activities. In *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.* the Federal Circuit affirmed a jury verdict of inducement where the Defendant maintained facilities in Singapore and California. 246 F.3d 1336, 1351 (Fed. Cir. 2001). While the infringing computer chips were manufactured in Singapore and sold abroad, the Defendant's California office may have also engaged in activities that could give rise to inducement

---

[3] Honeywell also cites a number of cases which hold that the scope of section 271(c) extends to extra-territorial activities. *See Lucas Aerospace, Ltd. v. Unison Industries, L.P.*, 899 F. Supp. 1268, 1288 (D.Del. 1995) (applying pre-1994 law to the conduct at issue); *Engineered Sports Prods. v. Brunswick Corp.*, 362 F. Supp. 722, 727 (D. Utah 1973). However, these cases are no longer applicable because section 271(c) has been amended to only cover conduct "within the United States." Pub. L. 103-465 § 533(a)(1) (1994). In light of this amendment, the Court rejects Honeywell's argument that section 271(c) liability can extend to extra-territorial conduct.

liability. Nonetheless, if extra-territorial acts of inducement could not support a claim under section 271(b), it is likely that the Court would have offered some explanation as to the additional infringing activity in the U.S. In *DSU Medical Corp. v. JMS Co.*, the Federal Circuit quoted a jury instruction which stated that "[u]nlike direct infringement, which must take place within the United states, induced infringement does not require any activity by the indirect infringer in this country, as long as the direct infringement occurs here." 471 F.3d at 1351. Although the Court did not expressly approve this statement, it is unlikely that it would have quoted it without qualification if it were a misstatement of the law. *See Wing Shing Products*, 479 F. Supp. 2d at 410.

In the face of substantial authority supporting Honeywell's position, CPT claims that, even if these cases support the extra-territorial reach of section 271(b), this position has been overruled by the Supreme Court in *Microsoft Corp. v. AT&T Corp.* 550 U.S. 437, 127 S. Ct. 1746 (2007). In that case, Microsoft sent a master disk containing a copy of its Windows software to a foreign manufacturer who used that master disk to install copies of Windows on computers sold in the U.S. The manufacture of the computers and the copying of the Windows software was done abroad. *Id.* at 1750. AT&T alleged that these copies of Microsoft Windows were "components" of an infringing product—a computer with the ability to run Windows—exposing Microsoft to liability under section 271(f).[4] *Id.* The Supreme Court held that, because the manufacturer made copies from the master

---

[4]
"(1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

"(2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made

disk, Microsoft did not "supply" a component of the computers involved, and that the copies of Microsoft Windows made from the master disk were not "components." *Id.* at 1756-57. After stating its holding, the Supreme Court noted that its decision was bolstered by the presumption against extra-territoriality, *i.e.*, the "presumption that United States law governs domestically but does not rule the world," or in other words, the general rule that "no infringement occurs when a patented product is made and sold in another country." *Id.* at 1750, 1758. It stated that this presumption applies with "particular force" in patent law. *Id.* at 1758. Although the Supreme Court only applied this presumption to section 271(f), CPT maintains that it is equally applicable when interpreting section 271(b).

The Court finds CPT's argument unpersuasive. The Supreme Court has stated elsewhere that this presumption is one of "prescriptive comity" designed to ensure that "potentially conflicting laws of different nations work together in harmony." *F. Hoffman-La Roche Ltd. v. Empagram S. A.*, 542 U.S. 155; 124 S. Ct. 2359, 2366 (2004); *see Microsoft*, 127 S. Ct. at 1755. In *Microsoft*, the Supreme Court explained that this concern was important in the 271(f) context because, had it ruled otherwise, it would "convert[] a single act of supply from the United States into a springboard for liability." 127 S. Ct. at 1755 (citing 414 F.3d 1366, 1373 (Fed. Cir. 2005) (Rader, J. dissenting)). In other words, Microsoft could be held liable for copies made from the master disk, even if the manufacture, sale, and use of the infringing product—the computer running Microsoft Windows—all occurred abroad, without Microsoft's knowledge. It found that this result would expose Microsoft to limitless liability

---

or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer." 35 U.S.C. § 271(f).

16

for foreign conduct which could have been protected under foreign patent laws, and that AT&T's rights would be more appropriately protected by acquiring and enforcing foreign patents against the manufacturer itself. *Id.*; *see also* 414 F.3d at 1372-76 (Rader, J. dissenting).

This Court is keenly aware that the Supreme Court has given no indication as to whether the presumption against extra-territoriality extends to section 271(b). However, in *Microsoft*, the Supreme Court appears to have discussed this presumption to bolster its conclusion that copies of software are not components under section 271(f). 127 S. Ct. at 1755. The Supreme Court was concerned with U.S. courts finding liability for foreign conduct which may be innocent under foreign patent laws. *Id.* This concern is not present here. Honeywell has not alleged simply that CPT manufactures and sells its products abroad without regard to U.S. markets. Rather, Honeywell alleges that CPT sells potentially infringing modules to foreign manufacturers with the intent that those modules be incorporated into consumer products sold in the United States. CPT will not be exposed to liability simply because of potentially innocent conduct on foreign soil. Rather, liability will extend to CPT only if it actively induced infringement in the United States by purposely availing itself of U.S. markets. *See Wing Shing Products*, 479 F. Supp. 2d at 411 n. 15 (noting that the intent requirement of section 271(b) serves as a check on the extra-territorial reach of United States patent law). Unless Honeywell can demonstrate active inducement, as in *Microsoft*, it must seek redress by obtaining and enforcing foreign patents.[5]

The Court finds that, under the current state of the law, the scope of section 271(b) can

---

[5] The Court's conclusion is bolstered by the fact that although sections 271(a), (c), (f), (g) explicitly limit their scope to actions committed in the United States, section 271(b) contains no such limitation. Of course, section 271(b) liability only arises when an act of direct infringement occurs in the United States. *C.R. Bard, Inc.*, 911 F.2d at 675.

extend to extra-territorial activities. Because Honeywell has alleged that CPT sold potentially infringing modules to foreign companies knowing that those modules would be incorporated into products sold in the United States, Honeywell is entitled to discovery regarding CPT's extra-territorial activities.

## CONCLUSION

For the reasons stated above, Honeywell's Motion is **GRANTED**. Due to the reasonable arguments presented by both sides, the parties will bear their own costs for arguing this motion.

By February 26, 2009, the Court **ORDERS** Defendant CPT to:

1.) Supplement its response to Interrogatory No. 1 by identifying all of its LCD products that perform dot and/or column inversion;

2.) Supplement its responses to Interrogatory Nos. 2-5, 7-8, 10-16, and 18 to include responsive information regarding all of its LCD products that perform dot and/or column inversion;[6]

3.) Supplement it responses to Interrogatory Nos. 13, 14, 15, and 16 to include responsive information related to its distribution agreements, correspondence, discussions, agreements, and promotional, marketing, and advertising efforts as it relates to non-U.S. entities that CPT is reasonably aware resell or otherwise redistribute CPT's products into the United States;

By March 6, 2009, the Court **ORDERS** Defendant CPT to:

4.) Produce a corporate representative prepared to testify with knowledge regarding: 1) all

---

[6] CPT disputes that it has the technical information sought by Honeywell. The Court expresses no opinion with regard to this dispute. To the extent that CPT has responsive technical information, it must produce that information to Honeywell.

CPT products that incorporate Drivers IC's capable of dot and/or column inversion; and 2) sales and marketing of such products in the United States and/or to companies that resell or redistribute such products in the U.S. market.

**So ORDERED and SIGNED this 5th day of February, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE