IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., et al. | § § § | |
| v. | § § | CIVIL ACTION NO. 6:07-CV-125 |
| ACER AMERICA CORPORATION, et al. | § § § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

The above entitled and numbered civil action has been referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. The Memorandum Opinion and Order containing the Magistrate Judge's claim construction ruling (Doc. No. 135; *Honeywell Int'l, Inc. v. Acer America Corp.*, No. 6:07-cv-125, 2009 WL 68896 (E.D. Tex. Jan. 7, 2009)) and the Report recommending that Defendants' Motion for Summary Judgment of Invalidity be denied (Doc. No. 136) have been presented for consideration. Plaintiffs Honeywell, Inc. and Honeywell International, Inc. ("Honeywell"), and Defendants AU Optronics Corp., AU Optronics Corp. America, BenQ America Corp., BenQ USA Corp., Chunghwa Picture Tubes, Ltd., and Novatek Microelectronics Corp. (collectively "Defendants") have filed objections (Doc. Nos. 145, 146, 147) to the Memorandum Opinion and Order and the Report and Recommendation. However, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct.

Most of the parties' objections consist of the same arguments which were already addressed by the Magistrate Judge. The Court will address two of Honeywell's objections.

First, Honeywell objects that the Magistrate Judge erred by construing the "first voltage" and "second voltage" of claim 1 as "single fixed" voltages. It claims that, although this construction is

based on the correct conclusion that the corresponding structure—pulse width modulation—requires fixed voltages, it improperly eliminates equivalent structures that do not require fixed voltages. Defendants point out that, even if the scope of these terms includes equivalent structures, equivalents to the pulse width modulator must perform the claimed interface means function in substantially the same way. *See Minks v. Polaris Indus.*, 546 F.3d 1364, 1379 (Fed. Cir. 2008).

Honeywell offers no evidence that some device may be able to achieve pulse width modulation without fixed voltages. Regardless, the plain language of the patent specification compels this Court to overrule Honeywell's objection. The '823 Patent states:

> Together, rails 46, 47, 48 and 49 supply binary levels of voltage [*i.e.* fixed voltages] to drivers 32 and 33. . . . An analog optical output can be obtained, while using binary signal levels by time-modulating the length of the time that active elements within the panel are allowed to be "on" and driven by this column driver. . . . This general category of control using fixed levels but varying "on" time to achieve a continuous range of control is often designated as pulse-width modulation.

'823 Patent at 6:39-59. In other words, the requirement for fixed voltages is not some ancillary feature of pulse width modulators which the Magistrate Judge injected into the claim construction, rather, it is a defining characteristic of pulse width modulation explicitly recognized by the '823 Patent. In fact, Honeywell cited the above quoted language as evidence of structure, *i.e.* a pulse width modulator, corresponding with the interface means limitation of claim 1, (Doc. No. 121), and the Magistrate Judge relied on the references to fixed voltages to determine that this structure is a pulse width modulator. *See Honeywell Int'l*, 2009 WL 68896 at *7. Were the Court to now disregard this portion of the specification, discerning structure accomplishing the interface means limitation would be difficult if not impossible.

Second, Honeywell objects that the Magistrate Judge erred by construing the "switching

means" limitation to interchange polarities only at a frame change. The Magistrate Judge offered two separate bases for its construction, and Honeywell objects to both. Honeywell argues that the Magistrate Judge's analysis of the specification and claim language was flawed because it improperly limited the scope of claim 1 to a single embodiment. It points out that the claims of a patent define the invention, and that an inventor is not required to disclose every conceivable combination of structure that might fall within the scope of a claim. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).

While Honeywell's statement of the law is certainly correct, it has not responded to the Magistrate Judge's exhaustive analysis of the '823 Patent's claim language and specification. Honeywell points to language in the specification which refers to interchanging polarities more frequently than at each frame change, but it does not address the Magistrate Judge's conclusion that this language refers to an unclaimed embodiment of the '823 Patent, which claim 1 does not read on. *See Honeywell Int'l*, 2009 WL 68896 at *11-12. In short, Honeywell can point to no intrinsic evidence supporting its position.

The Magistrate Judge also rejected Honeywell's proposed construction on the basis of prosecution disclaimer. Honeywell argues that prosecution disclaimer does not apply with regard to this limitation because the inventors did not unequivocally disclaim interchanging polarities more frequently than at each frame change. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

As the Magistrate Judge explained, during the prosecution of the '823 Patent, the examiner rejected all of the original claims in the '823 application as anticipated and/or obvious because one prior art reference "discloses all the subject matter claimed." '823 Examiner's Action Sept. 10, 1990

at p. 4 (citing T. Katagishi, et al., *A New Driving Technique for Flicker-Free Full Resolution LC-TV*, SID 86 Digest, Article 16.3, pp. 285-288 ("Katagishi")). Katagishi describes an LCD system in which pixel polarity is interchanged at the end of each frame, *and* within each frame, when there is a change from the odd field of the frame to the even field of the frame. Even and odd rows are scanned within periods called fields, which together comprise a frame, with the frame portraying the whole picture. '823 patent at 8:19-23. As shown in Figure 9(b) of Katagishi, the pixels in the matrix are variously in a dot inversion arrangement (odd field) or a column inversion arrangement (even field).

In response, the patentee cancelled all of its original 17 claims, added claims 18-24 (now claims 1-7), and stated that claim 1 covers "a display system having, in an unobvious combination, the particular features for interlaced sets of lines of pixels with opposing and interchanging polarities on a frame-to-frame basis." '823 Patent Amendment Mar. 14, 1991 at p. 6. The patentee's statement can only be understood to mean that the claimed invention is distinguishable from Katagishi because it claims a flicker free liquid crystal display system which only employs column inversion and only inverts polarities at the end of each frame change. Thus, the patentee clearly disclaimed interchanging polarities more frequently than at the end of each frame change. *See Omega Eng'g, Inc.*, 334 F.3d at 1324. This conclusion is consistent with the language of claim 1 of the '823 Patent which refers to pluralities of "lines of pixels" and the interchange of polarities "at each frame change." '823 Patent at 8:39-40, 8:55-56.[1]

Honeywell states that the patentee "*could not* have distinguished Katagishi on the basis of

---

[1] In contrast, rejected claim 1 refers to "a plurality of pixels," and rejected claim 4 refers to switching polarities "regularly and simultaneously." Patent Application 07/291726.

interchanging polarities at the end of a frame, since Katagishi discloses interchanging polarities within the frame *and* at the end of the frame."[2] (Doc. No. 145.) This argument ignores the fact that Katagishi and the '823 patent describe two different LCD systems. The fact that the '823 patent achieves flicker free liquid crystal display by *only* interchanging polarities at each frame change distinguishes it from Katagishi.

Honeywell contends that the patentee's statement was not meant to distinguish prior art. However, Honeywell's only explanation for the statement is the following:

> [T]he inventors distinguished their invention from Katagishi on the basis that their invention disclosed "an unobvious combination of structure" to accomplish the interchanging of polarities. In the patent specification, the inventors described "a new type of column driver IC," an embodiment of which is depicted in Figure 6, upon which Claim 1 reads. Katagishi does not disclose this combination. Therefore, it is on this basis that the inventors distinguished Katagishi, not on the basis of interchanging polarities at the end of the frame.

(Doc. No. 145.) Honeywell appears to claim that the quoted statements in the above passage render the prosecution history ambiguous, thus precluding the application of prosecution disclaimer. However, Honeywell offers no citation for these quotations, and the Court finds no support for Honeywell's position in the prosecution history. Furthermore, Honeywell offers no plausible alternative explanation for the patentee's statement to the examiner. Honeywell's objection to the application of prosecution disclaimer is overruled.

The parties' remaining objections have been adequately addressed by the Magistrate Judge's claim construction opinion, (Doc. No. 135), and are hereby overruled. The Court adopts the

---

[2] This argument roughly analogous to the following: "The inventor of the motorcycle cannot distinguish the automobile on the basis of having two wheels because the automobile also has two wheels." This argument ignores the fact that a motorcycle and an automobile are two different devices for transporting people. The fact that a motorcycle runs on *only* two wheels distinguishes it from an automobile which runs on four.

Memorandum Opinion and Order of the United States Magistrate Judge as the Opinion and Order of this Court. The Court adopts the Magistrate Judge's Report (Doc. No. 136) recommending denial of Defendants' Motion for Summary Judgment (Doc. No. 119) as the findings and conclusions of this Court. Defendants' Motion is **DENIED**.

    **So ORDERED and SIGNED this 18th day of March, 2009.**

    */s/ Leonard Davis*
    _____
    **LEONARD DAVIS**
    **UNITED STATES DISTRICT JUDGE**